**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-0159 -WS** |
| | ) | |
| **SYLVIA THERESITA SALINAS,** | ) | **CIVIL NO.  06-0043-WS** |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

On January 25, 2006, petitioner Sylvia Theresita Salinas filed a Motion to Vacate, Set

Aside or Correct Sentence by a Person in Federal Custody (doc. 76), pursuant to 28 U.S.C. §

2255.  The undersigned has examined the Motion pursuant to Rule 4(b) of the Rules Governing

Section 2255 Proceedings for the United States District Courts.  Because it plainly appears from

the Motion and the record that Salinas is not entitled to relief, this Motion is properly dismissed

under Rule 4(b) without the necessity of further briefing or an evidentiary hearing.

**I.     Background.**

On July 29, 2004, a grand jury sitting in the Southern District of Alabama handed down

an Indictment (doc. 18) charging Salinas and her codefendant, Corina Amelia Sanchez, with four

violations of federal narcotics laws, plus a forfeiture count.[1]  Count One charged Salinas and

Sanchez with conspiracy to import approximately three kilograms of cocaine from Mexico into

the United States, in violation of 21 U.S.C. § 963.  Count Two was a parallel charge that both

defendants had knowingly and intentionally imported cocaine from Mexico into the United

States on July 26, 2004, in violation of 21 U.S.C. § 952(a).  Count Three alleged that defendants

had conspired to possess with intent to distribute approximately three kilograms of cocaine, in

---

[1]       Evidence elicited at a suppression hearing revealed that the charges against
Salinas and Sanchez arose from an incident on July 26, 2004, wherein a Satsuma police officer
stopped a vehicle driven by Salinas on Interstate 65 in the Satsuma police jurisdiction for a
routine traffic infraction (failure to maintain lane).  As a result of that traffic stop, law
enforcement officers found and seized three kilograms of cocaine concealed between the inner
and outer cases of the automobile's battery.

violation of 21 U.S.C. § 846.  And Count Four charged them with knowingly and intentionally possessing with intent to distribute approximately three kilograms of cocaine on July 26, 2004, in violation of 21 U.S.C. § 841(a)(1).

On October 4, 2004, Salinas appeared with her court-appointed counsel before the undersigned and pleaded guilty to Count Four of the Indictment.  (*See* doc. 45.)  There was no written plea agreement.  A sentencing hearing was conducted before the undersigned on March 25, 2005.  In determining what sentence to impose, the Court computed the appropriate range under the United States Sentencing Guidelines.  Because she had pleaded guilty to possessing with intent to distribute approximately three kilograms of cocaine, Salinas was assigned a base offense level of 28 pursuant to U.S.S.G. § 2D1.1, which sets the base offense level at 28 when the offense involves at least 2 kilograms but less than 3.5 kilograms of cocaine.  The Court applied no enhancements, but did make three downward adjustments, to-wit: (a) a two-level downward adjustment pursuant to U.S.S.G. § 2D1.1(7) because it was determined that Salinas was eligible for the "safety valve" provisions of 18 U.S.C. § 3553(f); (b) a two-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility; and (c) an additional one-level decrease under § 3E1.1(b) because Salinas timely provided complete information to the Government concerning her involvement in the offense, and/or timely notified authorities of her intent to enter a guilty plea.  Having made such modifications, the Court found that Salinas's adjusted offense level was 23.  Coupled with petitioner's criminal history category of I, this finding yielded a Guidelines range of 46 to 57 months.

After ascertaining the appropriate Guidelines range, and upon consideration of the requisite factors enumerated in 18 U.S.C. § 3553(a) and the advisory nature of the Guidelines in the post-*Booker* sentencing framework, the Court sentenced Salinas to a term of imprisonment of 46 months, to be followed by a four-year term of supervised release.[2]  In so doing, the Court

_____

[2]       Because the amount of cocaine which Salinas pleaded guilty to possessing with intent to distribute exceeded 500 grams, she was subject to a statutory mandatory minimum sentence of 5 years.  *See* 21 U.S.C. § 841(b)(1)(B)(ii).  Nonetheless, as the Court found her eligible for the "safety valve" provisions of 18 U.S.C. § 3553(f), her sentence was substantially below the statutory minimum.  The Court expressly stated on the record that Salinas's sentence took into account her safety valve eligibility.  (*See* Sentencing Transcript, at 4.)

acknowledged that, "[o]f course, the Sentencing Guidelines are advisory" and applied them in that manner.  (Sentencing Transcript, at 8.)  Notwithstanding the advisory nature of those Guidelines, the Court rejected Salinas's request to depart below the Guidelines range, explaining that "at this time, I have no grounds before me to indicate that a non-guideline sentence should be imposed."  (*Id.* at 9.)  After rendering the sentence, the Court advised Salinas of her appellate rights in the following terms:

> "You can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea.  You have the right to apply for leave to appeal in forma pauperis, and the Clerk of Court will prepare and file notice of appeal upon your request.  With few exceptions, any notice of appeal must be filed within ten days of the date of entry of judgment."

(Sentencing Transcript, at 11.)

Salinas did not file a direct appeal of her conviction or sentence.  However, ten months later, she filed a § 2255 Motion, seeking to vacate, set aside or correct her sentence on the following grounds: (i) ineffective assistance of counsel for not filing an appeal on her behalf; (ii) *Apprendi* error based on the sentencing judge enhancing her sentence using facts not charged in the Indictment, not found by a jury, and not admitted by her; (iii) *Blakely/Booker* error based on the sentencing judge making unconstitutional enhancements to her sentence and applying the Guidelines as mandatory; and (iv) failure to give Salinas the benefit of the safety valve.  In accordance with its obligations under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has conducted a preliminary review of these assignments of error, and finds that petitioner is plainly not entitled to relief on any of them.

## II.    Habeas Standard.

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted."  456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging

the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5ᵗʰ Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim raised.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11ᵗʰ Cir. 1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11ᵗʰ Cir. 1990).  Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11ᵗʰ Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel. *Cross*, 893 F.2d at 1290.  To establish ineffective assistance of counsel:

> "... a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency.  A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."

*Hagins v. United States*, 267 F.3d 1202, 1204-05 (11ᵗʰ Cir. 2001) (internal citations omitted); *see also Cross*, 893 F.2d at 1290.  Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Cross*, 893 F.2d at 1290.[3]  Meanwhile, prejudice

---

[3]     Petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms."  *Gallo-*

requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[4]

   "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

**III.    Analysis.**

   *A.    Ground One:  Ineffective Assistance of Counsel.*

   As her first ground for relief, Salinas contends that her appointed counsel rendered ineffective assistance in failing to file an appeal on her behalf, failing to advise her of her right to appointed counsel on appeal, and purportedly "deceiving [her] as to the existence of an appeal."

---

*Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000).

   [4]    A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

(Motion, at 4.)  Because the specifics of Salinas's allegations are of critical importance to the analysis, the Court reproduces in full the supporting facts alleged by Salinas in support of this claim for relief, as follows:

> "(1) My attorney just said no appeal ... You should not appeal ... I was not given a choice by him ... (2) He never told me that I could get another attorney for an appeal without paying.  He never told me I could get a court appointed attorney.  Knowing I had no more money.  He decieved [*sic*] me by saying you would just lose your appeal he could not know my outcome of my appeal.  He just said no."

(Motion, at 4.)  There are two distinct components to petitioner's ineffective assistance claim. First, she alleges dissatisfaction with her lawyer's advice that she not appeal her conviction and sentence.  Second, she asserts that her lawyer failed to notify her of her right to proceed with different appointed counsel on appeal.  Neither has merit.

As an initial matter, the Sixth Amendment right to counsel does not encompass a right to an attorney who gives legal advice with which his client agrees.  *Cf. Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (ineffective assistance claim requires showing that counsel's representation fell below objective standard of reasonableness); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("The giving of legal advice that later is proven to be incorrect ... does not necessarily fall below the objective standard of reasonableness.").  To be sure, faulty legal advice born of ignorance of well-defined legal principles may be unreasonable and may fall outside the objective performance standards required of counsel's representation.  *See Smith*, 170 F.3d at 1054.  But Salinas does not allege any such deficiencies here.  At most, she expresses unhappiness that her lawyer advised her against filing an appeal because her prospects for prevailing were grim.  On the record before the Court, such advice was neither objectively unreasonable nor outside the wide range of competence demanded of attorneys in criminal cases. No infringement of Salinas's constitutional right to counsel can result from the mere fact that the advice given her by counsel concerning a potential appeal was not to her liking.  In the absence of some showing that counsel's pessimism regarding the likely efficacy of an appeal was unreasonable or incompetent, Salinas cannot mount a viable ineffective assistance claim for § 2255 relief on the basis of that advice.  *See United States v. Planas*, 884 F. Supp. 1488, 1493 (D. Kan. 1995) (no ineffective assistance where counsel advised defendant that there was not a "chance in Hell" that appeal would succeed, where record demonstrated that appeal would have

been futile).[5]

Nor can Salinas show an entitlement to § 2255 relief by arguing that she was unaware of her rights on appeal. During the sentencing hearing, the Court specifically advised petitioner that (a) she had the right to appeal, (b) she had the right to apply for leave to appeal *in forma pauperis*, (c) the Clerk of Court would prepare and file a notice of appeal for her upon request, and (d) in general, any notice of appeal must be filed within 10 days. (Sentencing Transcript, at 11.) Thus, while petitioner faults her lawyer for not telling her that she could have new court-appointed counsel on appeal, the undersigned provided her with substantial information concerning her appellate rights, including specifically her right to apply for leave to appeal *in forma pauperis* and the availability of the Clerk of Court to file her notice of appeal within the prescribed timeframe. Had Salinas pursued these options, she would have quickly learned that she was entitled to counsel (and appointed counsel, if necessary) on direct appeal. She chose not to do so; therefore, she could not have been harmed by her lawyer's alleged failure to apprise her that she could get another court-appointed lawyer on appeal.[6] This allegation cannot support Salinas's request that her sentence be vacated, set aside or corrected.

Although the foregoing addresses petitioner's ineffective assistance claim in its entirety, the Court wishes to clarify what this ground for relief is not. It is not a claim that petitioner's attorney disregarded a specific request from Salinas to file an appeal. Had it been made, such an

---

[5]     Petitioner's characterization of her counsel's advice as "deceiving" her is empty rhetoric, devoid of substance. The alleged "deception" is apparently that Salinas's attorney told her that her appeal would not succeed even though "he could not know my outcome of my appeal." (Motion, at 4.) From the record before the Court, it appears that any potential claims Salinas could have presented on direct appeal would have been extraordinarily weak, and she has not identified in these § 2255 proceedings any possible grounds for appeal that would have stood a reasonable likelihood of success. Thus, while Salinas is undoubtedly correct that her lawyer is not clairvoyant, it was neither deceptive nor otherwise ineffective assistance for him to apprise petitioner of his assessment that a direct appeal was likely to fail.

[6]     Besides, it is far from certain that Salinas would have been entitled to substitute appointed counsel on appeal. There is no indication here of the kind of breakdown in attorney-client communications necessary for petitioner's appointed counsel to be allowed to withdraw from that representation. As such, Salinas finds fault in her lawyer's failure to tell her "that I could get another attorney for an appeal without paying" (Motion, at 4), when as a factual matter she very well may not have been able to obtain substitute appointed counsel.

allegation would have required further investigation to explore its veracity.[7]  But it was not; therefore, the principle requiring an attorney to honor his client's instructions to file an appeal, even if the appeal is meritless, has no application here.

Nor can this claim be fairly construed as alleging a violation of counsel's obligation to consult with his client about the appeal.  Even in the absence of a client's specific request that her attorney file an appeal, in certain circumstances the attorney must "consult[] with the client regarding the advantages and disadvantages of appealing and ma[k]e a reasonable effort to determine the client's wishes."  *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005). That duty to consult is triggered "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known."  *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).[8]  There is no suggestion that Salinas had any nonfrivolous grounds for

---

[7]        After all, it is well settled that "a defendant is prejudiced where his attorney fails to file an appeal after being requested to do so, even after the defendant pled guilty. In this situation, the defendant is entitled to an out-of-time appeal, even without showing whether or not there are any viable grounds for such an appeal."  *Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) (reversing denial of § 2255 petition and instructing district court to grant relief allowing a direct appeal); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1209, 145 L.Ed.2d 985 (2000) (recognizing that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," as a matter of law); *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (discussing "well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se"); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005) ("it is ineffective assistance of counsel to refuse to file a notice of appeal when your client tells you to," regardless of whether appeal has any merit); *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) ("a lawyer who fails to follow a defendant's express instructions to file a notice of appeal acts in a manner that is professionally unreasonable").

[8]        The *Flores-Ortega* Court explained that the determination of whether a rational defendant would have desired an appeal or whether the particular defendant sufficiently demonstrated to counsel an interest in an appeal requires consideration of all relevant factors in a given case, including the nature and scope of any guilty plea.  *See id.*

appeal, or that there were other circumstances present under which any rational defendant would want to appeal.  Salinas entered a blind plea of guilty on one count of the Indictment, and the other three substantive counts were dismissed.  She received the benefit of several downward adjustments, and was sentenced to a term of imprisonment 14 months below the mandatory minimum sentence for the offense of conviction, thanks to the Court's application of a "safety valve" in her favor.  Given the frivolous nature of the objections Salinas has raised in her § 2255 Petition, none of those arguments would have been viable on direct appeal.  Thus, the Petition offers no reason to think that a rational defendant would have wanted to appeal.  Nor has Salinas shown that she reasonably demonstrated to counsel that she was interested in appealing.  Her Petition alleges that counsel made various statements to her about the prognosis of any appeal she might file, but never suggests that she articulated any expressions of interest that might have activated the duty to consult.[9]  As such, there is no need for further inquiry as to the duty to consult, because Salinas has failed to allege facts that might trigger such a duty.  *See Powell v. United States*, 2006 WL 93239, *4-5 (11th Cir. Jan. 13, 2006) (no ineffective assistance of counsel for failure to consult with defendant concerning appeal rights, where defendant never requested that attorney file an appeal or speak with him about appeals process, and where defendant had only frivolous grounds for appeal).

Even if Salinas had proffered allegations that she informed her counsel of her purported interest in appealing, she would still be obligated to show prejudice arising from counsel's

---

[9]     In that regard, the *Gomez-Diaz* decision is distinguishable.  Much like Salinas, the *Gomez-Diaz* petitioner pleaded guilty, failed to submit a notice of appeal, and then filed a timely § 2255 motion challenging his conviction and sentence on ineffective assistance grounds. Unlike Salinas, however, Gomez-Diaz alleged in his § 2255 filings that his counsel had "fail[ed] to perfect the requested appeal" on his behalf.  *See Gomez-Diaz*, 433 F.3d at 791 & n.1.  In finding that an evidentiary hearing was required, the *Gomez-Diaz* panel focused on the allegation in the pleading "that Petitioner made an initial request of his attorney to file an appeal," reasoning that if that allegation were true, then at a minimum counsel "had the affirmative duty to consult with Petitioner and to try to determine his wishes."  *Id.* at 792.  Here, by contrast, there were no allegations in the § 2255 Petition that Salinas ever made any statements to her lawyer that might trigger either the *per se* duty to appeal or the affirmative duty to consult with Salinas to ascertain her wishes.  At most, Salinas pleads a conclusory allegation of ineffective assistance, which is inadequate as a matter of law.  *See Wilson*, 962 F.2d at 997 ("conclusory allegations of ineffective assistance are insufficient" to entitle a petitioner to relief under § 2255).

failure to consult with her.  "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Flores-Ortega*, 528 U.S. at 484; *Frazer v. South Carolina*, 430 F.3d 696, 708 (4th Cir. 2005) ("Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.").  The record is devoid of such evidence.  To the contrary, the record shows that, after this Court informed petitioner on the record of her appeal rights, Salinas's counsel did advise her about her appeal prospects, and that she never filed an appeal.  Salinas has not suggested that further consultation by her lawyer would have prompted her to appeal; therefore, she cannot make the requisite showing of prejudice under the *Strickland* test.

        In short, then, Salinas's claim of ineffective assistance of counsel fails for the following reasons: (a) it was not ineffective assistance for her lawyer to give her reasonable, albeit unwelcome, legal advice with which she disagreed, (b) Salinas was on notice of her appellate rights based on information given her during the sentencing hearing, (c) Salinas offers no allegation that she ever instructed counsel to file a notice of appeal, (d) Salinas offers no allegation that she reasonably expressed interest to her counsel in pursuing an appeal, so as to trigger his affirmative duty to consult with her, and (e) Salinas cannot show prejudice, because she has identified no nonfrivolous grounds for appeal and has made no showing that she would have filed an appeal had she received reasonable advice from counsel regarding the appeal. Salinas's first ground for § 2255 relief is **overruled**.

        **B.**     ***Ground Two:*** **Apprendi.**

        Salinas's second ground for relief alleges a violation of *Apprendi*, contending that her "sentence was enhanced in violation of due process."  (Motion, at 4.)  Without identifying any such enhancements, petitioner's Motion reiterates several times her contention that her sentence was enhanced based on facts that were not charged in the Indictment, that were not presented to a jury, and that were not admitted by her.  (*Id.* at 4-4b.)

        This ground for relief is frivolous.  As a threshold matter, this claim is procedurally defaulted because it was not raised on direct appeal.  Salinas has shown neither cause nor

prejudice to overcome the default.  Furthermore, this claim is factually baseless.  In sentencing Salinas, the undersigned imposed no sentencing enhancements of any kind.  In computing her base offense level, the Court did rely on her involvement with 3 kilograms of cocaine; however, by pleading guilty to Count Four, Salinas admitted her involvement with that quantity of cocaine.  Thus, the Court did not engage in any fact-finding proscribed by *Apprendi* in computing either her base offense level or her adjusted offense level.  Because there were no Court-imposed enhancements to Salinas's sentence and no judicial findings that might implicate *Apprendi* concerns, and because Salinas has not identified any such enhancements in her Petition, this ground for relief is **overruled**.

    *C.*  *Ground Three:* **Booker / Blakely.**

  As her third ground for collaterally attacking her sentence, Salinas objects that she was improperly sentenced in violation of *Booker* because purportedly "punishment enhancing facts [were] previously determined by the Judge by the 50% plus preponderance of the evidence standard," thereby rendering her "enhancements ... unconstitutional."  (Motion, at 4c.)  Once again, this line of attack is procedurally barred because it was not presented on appeal and Salinas has shown neither cause nor prejudice.  Moreover, this ground for relief is puzzling to the extreme.  The Court made no enhancements and engaged in no improper fact-finding at her sentencing hearing, and Salinas offers no insights as to what phantom "enhancements" she finds objectionable.  Nor did the Court run afoul of *Booker*'s pronouncement that the Sentencing Guidelines must be construed as advisory; to the contrary, the undersigned expressly observed on the record during petitioner's sentencing hearing that the Sentencing Guidelines are advisory.  Simply put, the instant sentencing proceeding fully comported with both the constitutional and statutory dimensions of *Booker*.  *See, e.g., United States v. Cain*, 433 F.3d 1345 (11th Cir. 2005) (explaining that "*Booker* established two types of error in sentencing: (1) the constitutional error of using extra-verdict enhancements to reach a Guidelines result that is binding on the sentencing judge and (2) the statutory error of applying the Guidelines in a mandatory fashion").  Petitioner's third ground for relief is meritless on its face.

    *D.*  *Ground Four: Safety Valve Consideration.*

  Fourth and finally, Salinas asserts that the sentencing judge erred in not giving her a sentence reduction under the safety valve.  (Motion, at 5.)  This ground for relief is patently

baseless for two reasons.  First, it is procedurally defaulted.  *See Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) ("Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255.").  Petitioner has shown neither cause nor prejudice to excuse the default.  Second, even if this claim were properly presented, it is counterfactual.  The Court did give Salinas the benefit of the "safety valve."  Had it not done so, Salinas could have received a sentence of no less than the mandatory minimum of 60 months for the offense of conviction.  That she was sentenced to 46 months in prison, in and of itself, demonstrates that she enjoyed the benefit of the safety valve provisions of 18 U.S.C. § 3553(f).  Additionally, in computing the appropriate Guidelines range for Salinas, the Court made a two-level downward adjustment pursuant to U.S.S.G. § 2D1.1(7) because Salinas was deemed eligible for the safety valve modification.  Plainly, then, Salinas did receive the benefit of the safety valve and her assertion otherwise is groundless.  Her fourth ground for relief is **overruled**.

**IV.    Conclusion.**

        For all of the foregoing reasons, the Court finds that it plainly appears from the Motion and the record that Salinas is not entitled to relief.  Accordingly, petitioner's § 2255 Motion is hereby **dismissed with prejudice** pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings.  A separate judgment will enter.


        **DONE** and **ORDERED** this 9th day of February, 2006.



                              s/ WILLIAM H. STEELE
                              UNITED STATES DISTRICT JUDGE